# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1153V
Filed: February 11, 2025

| | |
|---|---|
| * * * * * * * * * * * * * * | * |
| MADELYN MALLOY, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * | * |

*Andrew Downing, Esq.,* Downing, Allison & Jorgenson, Phoenix, AZ, for petitioner.
*Alexis Babcock, Esq.,* U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth,** Special Master:

On April 2, 2021, Madelyn Malloy ("Ms. Malloy" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ("Vaccine Act" or "Program").[3] Petitioner alleged that she developed "new food hypersensitivities, POTS and autonomic dysfunction" as a result of the Gardasil[4] vaccines she received on June 26, 2018, August 17, 2018, and December 20, 2018. Petition, ECF No. 1. On December 28, 2021, petitioner elected to withdraw her petition after the expiration of the 240-day statutory period and now seeks an award of attorneys' fees and costs. ECF Nos. 13, 19.

After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is granted

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] The petitioner states that petitioner is "statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly. 42 U.S.C. § 300aa-11(a)(2)."

[4] Gardasil is a brand name for the human papillomavirus ("HPV") vaccine.

for the reasons set forth below.

### I. Background

The petition filed on April 2, 2021, alleged that petitioner's "new food hypersensitivities, POTS and autonomic dysfunction were caused-in-fact by the Gardasil vaccinations". Petition, ECF No. 1. Petitioner filed medical records on April 15, 2021. Petitioner's Exhibit ("Pet. Ex.") 1-7, ECF No. 6. The case was assigned to the undersigned on September 29, 2021, after completing the Pre-Assignment Review ("PAR") process. ECF No. 10.

On November 30, 2021, the undersigned issued a notice indicating that the statutory 240-day period for the special master's issuance of a decision in this case had expired. ECF No. 13. On December 28, 2021, petitioner filed a Notice of Intent to Withdraw her Petition pursuant to §300aa-21(b) and requested that the Court issue an order concluding proceedings. ECF No. 14. An order concluding proceedings was entered on December 29, 2021. ECF No. 15. Thereafter, petitioner filed additional medical literature. Pet. Ex. 8-12, ECF No. 18.

On January 28, 2022, petitioner filed a Motion for Attorneys' Fees and Costs seeking $7,957.79, representing $7,175.50[5] in attorneys' fees and $782.29 in costs. Motion for Fees, ECF No. 19. Respondent filed a response on February 8, 2022, arguing that petitioner lacks a reasonable basis for her claim and did not file or maintain the claim in good faith, and is therefore not entitled to an award of attorneys' fees and costs. Response, ECF No. 20. Petitioner filed a reply on February 15, 2022. ECF No. 21.

On March 2, 2022, petitioner filed a supplemental Motion for Attorneys' Fees and Costs, seeking an additional $2,626.00 in attorneys' fees to account for additional attorney's fees incurred since the original Motion. Supp. Motion for Fees, ECF No. 22. Petitioner requests a total of $10,583.79 in attorneys' fees and costs. *Id*. Respondent did not file a response to the supplement.

On June 7, 2022, petitioner filed a Notice of Supplemental Authority, citing the decision in *Wingerter on behalf of H.W. v. Sec'y of Health & Human Servs.*, No. 20-1408V, 2022 WL 1843522 (Fed. Cl. Spec. Mstr. May 17, 2022), stating that the decision addressed respondent's position and determined it lacked merit. ECF No. 24.

On August 17, 2022, petitioner filed a Transfer Order from the United States Judicial Panel on Multidistrict Litigation, explaining that the "Judicial Panel recognized that Plaintiffs in all involved actions exhausted the Vaccine Act claim process as a prerequisite to filing suit against Merck" and granted consolidation of the cases into a multidistrict litigation. ECF No. 26.

On December 9, 2022, petitioner contemporaneously filed a Notice of Additional Authority and an article that she stated was "additional, newly published authority" related to Gardasil. Pet. Ex. 13[6], ECF No. 27; ECF No. 28.

---

[5] In the body of petitioner's Motion, she requests $7,174.50 in attorneys' fees, but the billing records show a total of $7,175.50 in attorneys' fees. *See* Motion for Fees, Ex. A at 8.

[6] Jesper Mehlsen et al., *Autoimmunity in patients reporting long-term complications after exposure to human papilloma virus vaccination*, J. AUTOIMMUNITY (2022), filed as "Pet. Ex. 15."

## II.     Entitlement to Attorneys' Fees and Costs

The Vaccine Act permits fees in unsuccessful cases where appropriate, including in cases that are terminated without final resolution such as here. This is in keeping with the Program's goal of ensuring that petitioners have adequate assistance from counsel when pursuing their claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). There is a threshold requirement for fees under such circumstances, however – petitioners must demonstrate "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). However, fees can still be adjusted or denied entirely even where reasonable basis is established.

The Federal Circuit has explained that the relevant analysis involves two distinct inquiries: (1) a subjective one assessing whether the petition was brought in good faith and (2) an objective one ascertaining whether reasonable basis for the petition existed. *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Good faith is a subjective test, satisfied through subjective evidence"); *Turner v. Sec'y of Health & Human Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."); *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)) (addressing the objective requirements of reasonable basis).

Good faith is a subjective standard. *Simmons*, 875 F.3d at 635. Simply put, good faith is "whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007. As a result, a petitioner's mere belief in the legitimacy of a vaccine claim can supply the required good faith – no matter how factually misplaced that belief may be. *See Atjian*, 2022 WL 17587757, at *5-6 (discussing good faith extensively).

"Reasonable basis … is an objective test, satisfied through objective evidence." *Cottingham,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). As noted in prior cases, reasonable basis is a lenient standard. *Hughes v. Sec'y of Health & Human Servs.*, No. 16-930V, 2021 WL 6621169, at *3 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) *mot. for rev. denied*, 154 Fed. Cl. 640 (2021). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345-46. A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "'evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation.'" *Cottingham*

3

*v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

### III. Parties' Arguments

#### A. Petitioner's Motion

Petitioner argued that she was statutorily compelled to initiate this claim prior to pursuing a cause of action against the vaccine manufacturer directly. Motion for Fees at 1. When the Court did not act on petitioner's case within 240 days, she opted to withdraw her claim from the Vaccine Program. This did not change the fact that the claim was filed with a good faith reason for believing the vaccination was the trigger for petitioner's injuries and that a reasonable basis existed for submitting the claim. *Id*. at 1-2.

Petitioner argued that the existence of good faith in filing the claim is evidenced by petitioner's affidavit stating her belief that she was injured by the Gardasil vaccine. Motion for Fees at 2. Further, petitioner chose to withdraw her petition for the purpose of pursuing her claim against the manufacturer directly. *Id*. Regarding reasonable basis, petitioner argued that her medical chart supports the causal connection between vaccination and the injury claimed. *Id*. at 3.

Referencing the medical record, petitioner stated that she experienced periodic lightheadedness and dizziness after she received the first Gardasil vaccine on June 26, 2018, "but did not really think anything about it." Motion for Fees at 3 (citing Pet. Ex. 1 at 1). After the second Gardasil vaccine on August 17, 2018, the lightheadedness worsened, and she began feeling weak and fatigued. *Id*. The dizziness, weakness, and fatigue continued to worsen after she received the third Gardasil vaccine on December 20, 2018. Motion for Fees at 3 (citing Pet. Ex. 1 at 2).

Petitioner described an episode at a restaurant on March 3, 2019, when she "felt her whole body drop." Her arms and legs were weak, her heart was pounding, she could not swallow, and she was shaking. She turned pale and gray with redness on her chest and neck, and was transported to the hospital by ambulance, where the doctors concluded she most likely experienced a food allergy attack. She had never had food allergies prior. Motion for Fees at 3 (citing Pet. Ex. 1 at 2-3). As her symptoms continued, petitioner underwent various testing and was diagnosed with orthostatic intolerance/postural orthostatic tachycardia syndrome ("POTS"). She continues to deal with these symptoms and still suffers from severe anxiety. Motion for Fees at 4 (citing Pet. Ex. 1 at 7; Pet. Ex. 7 at 27, 32).

Petitioner alleged that her injuries were caused-in-fact by all three Gardasil vaccines, and her worsening after each in the series is evidence of re-challenge. The Institute of Medicine has determined that "re-challenge is strongly probative of a causal relationship." Motion for Fees at 4. Further, she submitted that the symptoms she suffered are the same as those contained in the Gardasil package insert as occurring post-vaccination. *Id*. (citing Pet. Ex. 9).

Finally, petitioner argued that she has a diagnosis of autonomic dysfunction with confirmation of POTS, which is well-documented in the literature as related to the HPV vaccine. Motion for Fees at 6 (citing Pet. Ex. 8-12).

B.  **Respondent's Response**

Respondent argued that petitioner lacks a reasonable basis for her claim and did not file or maintain the claim in good faith; therefore, she is not entitled to attorneys' fees and costs in this matter. Response at 1.

Respondent argued it was apparent that the petition was filed solely to satisfy the statutory requirement of filing a claim for a vaccine-related injury in the Program, so petitioner could then exit the Program to pursue a civil suit. Response at 8-9. Respondent noted that prior to the 240-day statutory deadline on November 30, 2021, petitioner "only filed a limited number of medical records", so the record in this case remained incomplete at the time of withdrawal and no attempts were made to complete the record. *Id*. at 9. Thus, petitioner did not bring her petition in a good faith attempt to adjudicate the case on the merits of the claim, but rather filed the petition "solely as a step towards her ultimate goal of bringing a cause of action against Merck directly." *Id*.

Regarding reasonable basis, respondent argued that petitioner's claims lack reasonable basis because the claims are unsubstantiated by petitioner's medical records or a medical opinion. Response at 10. First, while the claim alleged "food hyper insensitivity" and "autonomic dysfunction", the records do not demonstrate that she suffered symptomology consistent with these conditions, nor was she ever diagnosed with autonomic dysfunction or food hypersensitivity by a treating physician. *Id*. at 11. Respondent stated that the medical records show that petitioner experienced anxiety related to an adverse reaction to a meal she consumed, and it was noted that she was "not eating, crying a lot, had panic attacks, and 'nightmares about anaphylaxis.'" *Id*. Petitioner's ultimate diagnosis was anxiety related to anaphylaxis; she was never diagnosed with food hyper insensitivity or autonomic dysfunction. Thus, petitioner's attorney "failed to use reasoned judgment in determining whether to accept and pursue a claim as it relates to food hyper insensitivity and autonomic dysfunction." *Id*.

Further, petitioner was diagnosed with POTS on September 2, 2020, more than a year after she received her third dose of the HPV vaccine. Response at 11 (citing Pet. Ex. 6 at 145). However, none of her treating physicians have linked petitioner's condition to the HPV vaccine, nor has petitioner presented a medical theory causally linking the HPV vaccine to her alleged injuries. *Id*. Additionally, petitioner has not offered evidence to establish that the onset of her alleged injuries occurred in a timeframe within which vaccine causation could be ascribed. *Id*. at 11-12.

Respondent also noted that petitioner filed four pieces of medical literature after the petition was withdrawn and proceedings concluded. Response at 12. He argued that "it is clear that petitioner filed this literature solely for the purpose of attempting to support her request for attorneys' fees and costs." *Id*. Respondent cited *Goodgame*, in which Judge Somers criticized the petitioner's counsel for filing literature with a fee application to support the reasonable basis of the petition after the petitioner had already been dismissed. *Id*. at 12-13 (citing *Goodgame v. Sec'y of Health & Human Servs.*, No. 17-339V, 2021 WL 5365635 (Fed. Cl. Oct. 29, 2021)).

Respondent concluded that petitioner has not met her burden under the reasonable basis analysis, because she failed to provide a reliable medical theory causally linking the HPV vaccine to her alleged injury in general, failed to show that the HPV vaccine was the cause of her specific

injury, and failed to demonstrate a medically appropriate temporal relationship between her vaccine and alleged injury to support find a causal association. Response at 13. Finally, respondent added that finding reasonable basis and good faith in this case would thwart the Program's goal, which encourages petitioner's attorneys to perform fundamental due diligence and pursue claims that have some basis in fact, science, and law. Further, it would delay compensation for those cases where petitioners intend to develop and litigate meritorious claims. Petitioner only used this Court to reach the goal of bringing her action against Merck directly, and the request for fees and costs should be denied. *Id*. at 13-14.

### C. Petitioner's Reply

Petitioner replied that respondent has already unsuccessfully raised these same arguments in cases such as *Thomas*, *Hoover*, and more. Reply at 1-2; *see Thomas v. Sec'y of Health & Human Servs*., No. 20-886V, 2021 WL 2389837, at *1 (Fed. Cl. Spec. Mstr. May 17, 2021), *Hoover v. Sec'y of Health & Human Servs*., No. 20-1394V, 2021 WL 5575768 (Fed. Cl. Spec. Mstr. Nov. 1, 2021).

Petitioner argued that Congress did not contemplate nor does the Vaccine Program provide absolute immunity for vaccine manufacturers, and therefore there is no basis to state that petitioner is not within her rights to withdraw her petition and litigate against the manufacturer, and respondent cannot point to anything in the statute to support the argument that petitioner must litigate the claim to completion on the merits. Reply at 2-4, 6. Further, good faith does not require a claim be continued through to an entitlement ruling, and if successful, through damages. *Id*. at 2-4. Petitioner cited to decisions in *Hoover* and *Thomas* to support his assertion that withdrawing a petition at 240 days to pursue a civil action was explicitly contemplated by the Vaccine Act, and the good faith requirement refers to petitioner's belief that the vaccine caused her injury and not his intention to litigate his claim to completion within the Program. Reply at 5-6 (citing *Hoover*, 2021 WL 5575768 at 8 (Fed. Cl. Spec. Mstr. Nov. 1, 2021) and *Thomas*, 2021 WL 2389837 at 7-8 (Fed. Cl. Spec. Mstr. May 17, 2021)). Further, petitioner noted that the statute requires petitioners to first file in the Vaccine Program before pursuing the vaccine manufacturer directly, and petitioner has complied with that requirement. *Id*. at 6.

Further, petitioner submitted that petitioners are entitled to a presumption of good faith absent direct evidence of bad faith, and if petitioner honestly believes she has suffered a vaccine injury, then the good faith requirement is satisfied. Reply at 7. Petitioner argued that she clearly believes she was injured by the Gardasil vaccine because she filed an affidavit to this point and discussed her belief that the Gardasil vaccine caused or contributed to her injuries with her medical providers, as supported by the medical records. *Id*.

Regarding reasonable basis, petitioner argued that her medical records consistently support a causal connection between her injury and the Gardasil vaccines she received on June 26, 2018; August 17, 2018; and December 20, 2018. Reply at 7-8. Petitioner stated that she suffers from autonomic dysfunction, and cites to a note in her medical records from a section titled "Additional Chief Complaints" that states "wants to discuss possible side effects from HPV vaccine." *Id*. at 8 (citing Pet. Ex. 6 at 70). She referred to the discussion of re-challenge in her Motion, noting that

given her condition worsened after each dose of Gardasil, "re-challenge is strongly probative evidence for causation, so it definitely supports reasonable basis." *Id*.

Petitioner argued that the medical literature supports that she has a "probable injury from Gardasil." Reply at 9. Specifically, petitioner suffered nine out of the ten major symptoms associated with Gardasil vaccine as listed in the *Ozawa*[7] criteria, and having five or more of these symptoms would place an individual in the clinical category of having a "probable" injury. *Id*. She argued a probable injury from Gardasil is "well above the scintilla test for reasonable basis for bringing a claim in the first place." *Id*.

Petitioner then discussed respondent's citation to *Goodgame v. Sec'y of Health & Human Servs.*, No. 17-339V, 2021 WL 5365635 (Fed. Cl. Oct. 29, 2021). Reply at 9. Petitioner argued that the circumstances in *Goodgame*, where the Court was critical of counsel filing medical literature to support a fee application after entitlement was determined on the merits, are different than those in the instant matter, where petitioner's claim was withdrawn at the 240-day mark. *Id*. at 9-10. Petitioner asserted that, even with these circumstances aside, the logic in *Goodgame* is "markedly unsound", because compensation to petitioner is not closed until attorneys' fees and costs are resolved. *Id*. at 10. Petitioner stated that it cannot be argued that petitioner cannot provide any information in support of a Motion for Attorneys' Fees and Costs, because it is considered a separate motion from compensation and petitioner has the burden to support it at the time of filing. *Id*. Further, petitioners always submit evidence that was not before the Court during the entitlement stage at the time of a Motion for Attorneys' Fees and Costs, such as billing invoices. *Id*. at 10-11.

Petitioner concluded that she received a covered vaccine in the Program and manifested known vaccine-related symptoms following receipt of the vaccine that are documented in medical literature and the product monograph, and reasonable basis therefore exists. Reply at 11. Petitioners in the Program are entitled to representation by counsel and can exercise their statutory rights to withdraw or dismiss their petition. To penalize them for doing so would constitute legal error. *Id*. at 11-12. Petitioner made the decision to withdraw her petition as she is specifically authorized to do, and the claim was brought in good faith and with a reasonable basis, so petitioner is entitled to payment of attorneys' fees and costs. *Id*. at 12.

### IV.  Fees Are Appropriate for This Matter

#### A. Good Faith

The claim had sufficient good faith, even if counsel expected to withdraw it before its adjudication. Petitioner correctly stated that she "was statutorily compelled to initiate this claim prior to pursuing a cause of action against [the vaccine manufacturer] directly." Motion for Fees at 1. She withdrew her petition eight months after filing and before the claim's substantive basis could be evaluated. As discussed in my decision in *Hendrix*, there are numerous detailed decisions involving the same counsel alleging injuries related to the HPV vaccine, all of which were withdrawn in accordance with the terms of the Vaccine Act and its Rules solely for the purpose of

---

[7] Kazuki Ozawa et al., *Suspected Adverse Effects After Human Papillomavirus Vaccination: A Temporal Relationship Between Vaccine Administration and the Appearance of Symptoms in Japan*, 40 DRUG SAFETY 1219 (2017), filed as "Pet. Ex. 12."

joining them with other similar cases against the vaccine manufacture pending in another forum. The same issues and arguments presented herein have been addressed, and it has been concluded that the withdrawal of a petitioner at the 240-day mark does not preclude a finding of good faith and reasonable basis. *See Hendrix v. Sec'y of Health & Human Servs.*, No. 20-868V, 2024 WL 1989031 (Fed. Cl. Spec. Mstr. Apr. 11, 2024); *Atjian v. Sec'y of Health & Human Servs.*, No. 21-1413V, 2022 WL 17587757, at *1 (Fed. Cl. Spec. Mstr. Oct. 18, 2022); *Thomas v. Sec'y of Health & Human Servs.*, No. 20-886V, 2021 WL 2389837 (Fed. Cl. Spec. Mstr. May 17, 2021).

Respondent argued that for a case to be brought in good faith, it must be brought "in an attempt to adjudicate this case on the merits of the claim" in the Program. Response at 9. However, the Chief Special Master rejected that definition in favor of petitioner's definition of good faith, which is the same as proposed herein, and found that good faith was satisfied simply because the petitioner believed the vaccine was injurious. *Atjian*, No. 21-1413V, 2022 WL 17587757, at *5-*6; *see* Motion for Fees at 2-3.

Here, petitioner's affidavit and her report to a medical provider on November 26, 2019 that she "want[ed] to discuss possible side effects from HPV vaccine" demonstrate that she believed that the subject vaccines caused her symptoms. Pet. Ex. 6 at 70. Further, it is clear that petitioner still believes she was injured by the Gardasil vaccines, because the petition was withdrawn for the sole purpose of pursuing the claim against the vaccine manufacturer directly. Motion for Fees at 2. I find that this is sufficient to satisfy the standard for good faith.

### B. Reasonable Basis

Respondent argued that the medical literature petitioner filed after the withdrawal of her petition and in support of her Motion for Attorneys' Fees and Costs should not be considered supportive of reasonable basis because "it is clear that petitioner filed this literature solely for the purpose of attempting to support her request for attorneys' fees and costs." Response at 12. Respondent cited to *Goodgame*, where the Court declined to consider medical literature filed after the Special Master denied entitlement to support a claim for attorneys' fees. *Id*. at 12-13 (citing *Goodgame v. Sec'y of Health & Human Servs.*, No. 17-339V, 2021 WL 5365635 (Fed. Cl. Oct. 29, 2021).

This argument has already been addressed in *Merino v. Sec'y of Health & Human Servs.*, No. 19-1723V, 2022 WL 16579475 (Fed. Cl. Spec. Mstr. Sept. 20, 2022). In that matter, the Special Master reasoned that:

> . . . [while] it is generally preferable for petitioners to file evidence before a decision on the merits, especially if such evidence will assist in the prosecution of their claim, there are instances where filing evidence during the fees stage may also be appropriate. For example, in the case at bar, Petitioner decided to leave the Vaccine Program in order to pursue a claim against the vaccine manufacturer. Under these circumstances, it seems of little consequence whether she filed evidence in support of her application for fees after I dismissed her case but before she requested attorneys' fees and costs. The evidence would not have assisted Petitioner in the

8

> prosecution of her Vaccine Program claim because her intent was to exit the program and file a civil action.

*Merino*, 2022 WL 16579575 at *9. Based on the similarities of the case herein and *Merino*, I apply the same logic as the Special Master in *Merino* and find that filing evidence to support reasonable basis during the fees stage is not improper under these circumstances. *See id*. Accordingly, I will consider the medical literature petitioner filed in support of her claim for purposes of determining reasonable basis.

Reasonable basis requires sufficient objective evidence to support the claim. Respondent challenged reasonable basis, arguing that petitioner's claim was not supported by either her medical records or a medical opinion. Response at 10. He further submitted that petitioner was never diagnosed with food hypersensitivities and autonomic dysfunction as alleged in her petition, and while she was eventually diagnosed with POTS, it was not until over a year after she received the third dose of Gardasil, and none of her treating physicians linked her condition to the vaccinations. *Id*. at 11; Petition at 1.

While the evidence filed may have been insufficient for a ruling on entitlement in favor of petitioner, a finding of reasonable basis requires a mere scintilla of objective evidence to support a feasible claim—a burden that is much lower than the preponderance of evidence standard required for entitlement. It is well-established that an expert report addressing causation is not necessary to show that a claim had a reasonable basis. *James-Cornelius v. Sec'y of Health & Human Servs*., 984 F.3d 1374, 1379-80 (Fed. Cir. 2021). Further, the Federal Circuit explained in *James-Cornelius* that affidavits or sworn statements may provide objective evidence supporting a claim in the Vaccine Program. *Id*. at 1380-81.

The petition alleges that petitioner developed new food hypersensitivities, POTS, and autonomic dysfunction as a result of the Gardasil vaccines she received on June 26, 2018; August 17, 2018; and December 20, 2018. Petition at 3. In a sworn statement, petitioner affirmed that she experienced lightheadedness following the first dose that worsened after the second dose and included weakness and fatigue. Pet. Ex. 1 at 2. After the third dose, her dizziness, weakness, and fatigue continued to worsen, and she began experiencing anaphylactic episodes. *Id*. Her medical records indicate petitioner experienced symptoms including nausea, headache, abdominal pain, and fatigue, which were consistent with the symptoms listed in the Gardasil package insert. Pet. Ex. 2; Pet. Ex. 6 at 3, 12-13, 31-33, 54, 77, 84. Petitioner was ultimately diagnosed with POTS.[8] Pet. Ex. 6 at 145, 129, 139; *see* Pet. Ex. 7 at 27.

Additionally, petitioner filed medical literature supportive of a causal connection between POTS, dysautonomia, and orthostatic intolerance and the HPV vaccine. Pet. Ex. 8[9]; Pet. Ex. 9[10];

---

[8] A note from a medical visit on June 25, 2020 states "[h]istory is most consistent with non anaphylactic systemic symptomatology with peppers, most likely secondary to vasomotor response to capsaicin, which may be exaggerated given her known diagnosis of POTS." Pet. Ex. 6 at 133.

[9] Manuel Martinez-Lavin, *Hypothesis: Human papillomavirus vaccination syndrome—small fiber neuropathy and dysautonomia could be its underlying pathogenesis*, 34 CLINICAL RHEUMATOLOGY 1165 (2015), filed as "Pet. Ex. 8."

[10] Louise S. Brinth et al., *Orthostatic intolerance and postural tachycardia syndrome as suspected adverse effects of vaccination against human papilloma virus*, 33 VACCINE 2602 (2015), filed as "Pet. Ex. 9."

Pet. Ex. 10[11]; Pet. Ex. 11[12]; Pet. Ex. 12[13]. Specifically, petitioner cited to the *Ozawa* article, which outlines ten diagnostic criteria for suspected adverse effects after HPV vaccine, arguing that petitioner experienced nine out of ten symptoms based on her medical records and sworn statement. Reply at 8-9 (citing Pet. Ex. 1 at 2-3; Pet. Ex. 6 at 25, 67, 70, 128; Pet. Ex. 7 at 27); Pet. Ex. 12.[14] To prevail on entitlement, petitioner would have needed to provide evidence beyond her sworn statement, the vaccine package insert, and medical literature. However, this evidence, taken with the medical records filed and petitioner's sworn statement, provide more than the "mere scintilla" of evidence required to support a determination of reasonable basis. Thus, I find that the claim was filed and maintained with a reasonable basis.

## V. Attorneys' Fees and Costs Calculation

### A. Legal Standard

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include hours in their fee requests that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). Rather, when assessing attorney's fees and costs, the goal is to achieve a "rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### B. Attorneys' Fees

#### 1. Reasonable Hourly Rates

Petitioner requests compensation based on the following rates: for attorney Andrew Downing, $385 per hour for work performed in 2020 and 2021, and $415 for work performed in 2022; for attorney Courtney Van Cott, $275 per hour; and for paralegals Robert Cain and Danielle Avery, $135 per hour. Motion for Fees, Ex. A; Supp. Motion for Fees, Ex. A. The requested rates are reasonable and consistent with what has previously been awarded for work these individuals

---

[11] Tomomi Kinoshita et al., *Peripheral Sympathetic Nerve Dysfunction in Adolescent Japanese Girls Following Immunization with the Human Papillomavirus Vaccine*, 53 INTERNAL MED. 2185 (2014), filed as "Pet. Ex. 10."

[12] S. Blitshteyn, *Postural tachycardia syndrome following human papillomavirus vaccination*, 21 EUR. J. NEUROLOGY 135 (2013), filed as "Pet. Ex. 11."

[13] Ozawa et al., *supra* note 7.

[14] *Id.*

10

have performed in other cases.[15] *See Hendrix*, No. 20-868V, 2024 WL 1989031; *Atjian*, No. 21-1413V, 2022 WL 17587757.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary*." Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

The overall hours spent on this matter appear reasonable. I have reviewed the billing entries and find that they adequately describe the work performed and the amount of time spent on that work. None of the entries appear objectionable, nor has respondent identified any entries as objectionable. Accordingly, petitioner is awarded total attorneys' fees of **$9,801.50.**[16]

### C. Attorneys' Costs

Petitioner requests **$782.29** in costs. Motion for Fees, Ex. A at 8-9. This amount is comprised of costs for obtaining medical records, postage costs, and the Court's filing fee. *Id.* In his Motion, pursuant to General Order No. 9, counsel indicated that petitioner did not incur out-

---

[15] The 2015-2024 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[16] This amount includes the attorneys' fees requested in petitioner's Motion ($7,175.50) and petitioner's Supplemental Motion ($2,626.00).

11

of-pocket litigation costs. Motion for Fees at 8. I have reviewed the requested costs, find them to be reasonable, and award them in full.

## VI.   Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED.** Accordingly, I award a total of **$10,583.79,** representing $9,801.50 in attorneys' fees and $782.29 in costs, **to be paid through an ACH deposit to petitioner' counsel Mr. Andrew Downing's IOLTA account for prompt disbursement.** The Clerk of Court is directed to enter judgment in accordance with this decision. [17]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.